UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-2157 JGB (SPx)** | Date | April 10, 2020 |
|---|---|---|---|
| Title | *Francis Pargett v. Wal-Mart Stores, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant Wal-Mart Store Inc.'s Motion to Dismiss; and (2) VACATING the April 13, 2020 Hearing (IN CHAMBERS)

    Before the Court is Defendant Wal-Mart Stores, Inc.'s ("Defendant" or "Wal-Mart") motion to dismiss Plaintiff Francis Pargett's ("Plaintiff") First Amended Complaint ("FAC," Dkt. No. 17) pursuant to Rules[1] 12(b)(6) and 9(b). ("Motion," Dkt. No. 19.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

    On November 8, 2019, Plaintiff filed this action against Wal-Mart in federal district court, alleging various state law claims arising out of Wal-Mart's alleged misrepresentations regarding the energy efficiency of several models of Great Value-brand LED light bulbs sold to Plaintiff and others in the proposed class. ("Complaint," Dkt. No. 1.) On January 30, 2020, Defendant filed a motion to dismiss the Complaint. ("First MTD," Dkt. No. 16.) In response, Plaintiff filed a first amended complaint ("FAC," Dkt. No. 17) that mooted the First MTD (Dkt. No. 18). In the FAC, Plaintiff alleges seven causes of action: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) unjust enrichment; (4) fraud; (5) violation of

---

[1] The Court refers to the Federal Rules of Civil Procedures as the "Rule(s)" throughout this Order.

California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, et seq.; (6) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq.; and (7) violation of California's False Advertising Law ("FAL"), Bus & Prof. Code §§ 17500, et seq. (See FAC.)

On February 28, 2020, Defendant moved to dismiss the FAC. (See Motion.) In support of the Motion, Defendant filed a memorandum of points and authorities ("Memo," Dkt. No. 19-1), the declaration of Mark. D. Campbell (Dkt. No. 19-7 (attaching one exhibit, the "Campbell Exhibit," Dkt. No. 19-8), and a proposed order (Dkt. No. 19-9). Defendant also filed four requests for judicial notice. ("RJN 1–4," Dkt. Nos. 19-3–6.) On March 23, 2020, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 20.) On March 30, 2020, Defendant replied to the Opposition. ("Reply," Dkt. No. 21.) In support of the Reply, Defendant filed two additional requests for judicial notice. ("RJN B–C," Dkt. Nos. 21-2–3.)

## II.   LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 9(b)

Federal Rule of Civil Procedure Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pled with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) applies also where the claim is "grounded in fraud" or "sound[s] in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how' of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483, at *5 (C.D. Cal. Oct. 24, 2016) (quoting Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)). The purpose of this requirement is to allow for "the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Odom v. Microsoft Corp., 486 F.3d 541, 554–55 (9th Cir. 2007) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399–400 (9th Cir. 1986)). Despite this more demanding pleading standard, courts have relaxed the particularity requirement in Rule 9(b) where "plaintiffs cannot be expected to have personal knowledge of the relevant facts." Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).

### C. Leave to Amend

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit holds "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). However, leave to amend is not automatic. If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

### III.   REQUESTS FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of several exhibits. (Dkt. Nos. 19-2, 21-1.) In a motion to dismiss under Rule 12(b)(6), a court may consider "matters of judicial notice" without converting the motion into a motion for summary judgment. U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to

sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Under Federal Rule of Evidence 201, "[a] court must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Judicial notice is appropriate for "matters of public record." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, Defendant requests that the Court take judicial notice of five exhibits necessary to resolve the Motion: (1) RJN 2, the Energy Star program requirements for lamps (light bulbs), last revised September 2017; (2) RJN 3, the Energy Star verification testing roles and responsibilities, (3) RJN 4, the disqualification procedures for Energy Star products, last updated February 28, 2018; (4) RJN A, the Energy Star program requirements for third-party certification, dated March 30, 2020; and (5) RJN B, a historical list of Energy Star certified light bulbs, last revised April 3, 2017. All five documents are publicly available on the Energy Star program website, which is operated by the United States Department of Energy ("DOE"). (Dkt. Nos. 19-2, 21-1.) "Under Rule 201, the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." U.S. ex rel. Modglin v. DJO Glob. Inc., 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), aff'd sub nom. United States v. DJO Glob., Inc., 678 F. App'x 594 (9th Cir. 2017) (internal quotations omitted). Moreover, Plaintiff does not object to any of Defendant's requests for judicial notice. Accordingly, the Court GRANTS Defendant's request with respect to RJN 2, RJN 3, RJN 4, RJN A, and RJN B. As to the remainder of the requests, the Court need not rely on the contents of the exhibits to reach a decision on the Motion. As such, the Court DENIES as MOOT Defendant's remaining RJNs.

## IV.   DISCUSSION

Defendant moves the Court to dismiss Plaintiff's FAC under Rules 12(b)(6) and 9(b). (See Motion.) In the FAC, Plaintiff alleges that Wal-Mart misrepresented the energy efficiency of various models of Great Value-brand LED light bulbs. (FAC ¶ 1.) In particular, Plaintiff alleges that Wal-Mart placed labels on its light bulbs that promoted them as Energy Star-qualified[2] when they did not meet Energy Star efficiency standards. (Id.) Defendant asserts that Plaintiff's FAC inadequately pleads a misrepresentation on the part of Wal-Mart, and that when considered with the judicially-noticed exhibits submitted by Defendant, the FAC fails to allege any viable claims. (See generally Memo.) For reasons described below, the Court agrees with Defendant.

---

[2] Energy Star-qualified light bulbs are light bulbs deemed by the DOE to exceed minimum standards for energy efficiency set by the Environmental Protection Agency ("EPA"). (FAC ¶ 2.) According to the FAC, "[l]ighting products that have earned the ENERGY STAR label deliver exceptional [lighting] features, while using less energy" and consequently passing on cost-savings to consumers. (Id.)

**A. Claims Four to Seven: Fraud, CLRA, UCL, FAL Claims**

Defendant moves the Court to dismiss Plaintiff's fraud-based claims for failure to allege fraud with particularity. (Memo at 12); see also Fed. R. Civ. P. 9(b) (requiring that allegations grounded in fraud be pled with particularity). Defendant primarily argues that Plaintiff's allegations fail to establish that it misrepresented that its lightbulbs were Energy Star-qualified.[3] (Memo at 14.) According to Defendant, Plaintiff's FAC is inadequate because it alleges that the Great Value-brand light bulb purchased by Plaintiff was not disqualified from the Energy Star program until after Plaintiff purchased his light bulb. (Id.) The Court agrees.

Plaintiff bases Claims Four to Seven on his allegations that Wal-Mart mislabeled a light bulb he purchased in August of 2018 with a logo that falsely promoted the light bulb as Energy Star-qualified. (FAC ¶¶ 1, 47.) Specifically, Plaintiff alleges that the DOE periodically evaluates and verifies performance test results to "ensure that Energy Star-certified appliances correspond to actual savings for consumers." (Id. ¶ 41.) On June 18, 2019, after such testing and verification, the DOE "disqualified" the model of light bulb Plaintiff purchased from the Energy

---

[3] Defendant contends that the Court should ignore Plaintiff's allegation in the FAC that he purchased a light bulb at a Wal-Mart store in August of 2018 because Plaintiff originally alleged that he purchased the light bulb at some point in "2017." (Compare Complaint ¶ 10 (alleging that Plaintiff purchased mislabeled light bulb from Wal-Mart in 2017), with FAC ¶ 10 (alleging that Plaintiff purchased mislabeled light bulb from Wal-Mart in August of 2018).) However, this Court has previously held that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." McCrary v. Elations Co., LLC, 2014 WL 1779243, at *4 (C.D. Cal. Jan. 13, 2014) (quoting PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007)). Furthermore, the case relied on by Defendant to argue for estoppel or dismissal of Plaintiff's allegation, Reddy v. Litton Industries, Inc., 912 F.2d 291, 296 (9th Cir. 1990), involved the standard for leave to amend under Rule 15, while PAE more relevantly addressed the permissibility of inconsistent allegations in prior complaints in a Rule 12 analysis. See Naeyaert v. Kimberly-Clark Corp., 2018 WL 6380749, at *5 (C.D. Cal. Sept. 28, 2018) (intimately outlining the holdings in Reddy and PAE and reconciling the two by observing that "*Reddy* provided the standard under Rule 15, while *PAE* provided the standard under Rule 12").

Defendant heavily implies that Plaintiff amended his complaint in bad faith to avoid dismissal when Defendant filed the First MTD and targeted the timing of Plaintiff's light bulb purchase in 2017 as it related to the change in Energy Star standards that year. (Reply at 8.) While the Court admits that the timing and character of Plaintiff's amendment is suspicious, it is also true that as litigation proceeds the parties "learn[] more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities." PAE, 514 F.3d at 859. In any event, if Defendant believes Plaintiff has amended in bad faith, its means of redress is through Rule 11, not Rule 12. Id. at 860 ("If a party believes that its opponent pled in bad faith, it can seek other means of redress, such as sanctions under Rule 11.").

Star program. (Id. ¶ 44.) Plaintiff goes on to explain his belief as to the importance of a disqualification from the DOE in the FAC:

> "The Mislabeled LED Bulbs have never, at any point, been properly labeled with the ENERGY STAR® logo…. [That] the DOE disqualified the units in 2019 does not mean they were compliant prior to 2019. To the contrary, the DOE's determination means the Mislabeled LED Bulbs were never properly labeled. Any representation to the contrary was false when it was made. The Mislabeled LED Bulbs failed to work properly from the outset."

(Id. ¶ 48.)

Plaintiff's allegations are both internally inconsistent and directly contradicted by judicially-noticed facts. As to the former defect, Plaintiff outright alleges that disqualification from the Energy Star program occurs only once "the DOE has evaluated and verified performance test results to ensure that ENERGY STAR®-certified appliances correspond to actual savings for consumers." (Id. ¶ 41 (emphasis added).) Mysteriously, several paragraphs later, Plaintiff alleges that disqualification "does not mean [the light bulbs] were compliant prior to 2019. To the contrary, the DOE's determination means the [light bulbs] were never properly labeled." (Id. ¶ 48.) But Plaintiff's allegation that the light bulb he purchased was never Energy Star-qualified is belied by the allegation that the DOE only evaluates "ENERGY STAR®-certified appliances" for compliance. (Id. ¶ 41.)

Furthermore, in light of judicially-noticed facts, Plaintiff's allegation that disqualification establishes that the light bulbs "have never, at any point, been properly labeled" is fundamentally contradicted by Energy Star's disqualification process and standards. (Id. ¶ 48.) Energy Star conducts annual verification tests of a "sampling of Energy Star certified products[.]" (RJN 3 at 2.) Products that fail these verification tests are reported to and handled by the EPA consistent with Energy Star disqualification procedures. (Id.) If a determination to disqualify an appliance is made, Energy Star certification is "withdraw[n]" and the EPA posts the disqualified appliance on a list of disqualified products on its program integrity webpage. (RJN 4 at 3.) That webpage "provides consumers and utilities with information regarding models that no longer meet product standards." (Id. (emphasis added).) Thus, in order to be disqualified by the EPA, a product must first be certified as Energy Star-qualified — a process which itself consists of independent testing that ensures that a product actually complies with Energy Star standards. (See RJN A at 2 (explaining that the EPA requires all Energy Star products to be third-party certified through independent laboratory testing and review prior to certification)); (see also FAC ¶ 3 (quoting Energy Star website statement that "ENERGY STAR Certified Light Bulbs… [m]eet strict quality and efficiency standards that are tested by accredited labs and certified by a third party").)

Of course, the significance of Plaintiff's blatantly contradictory allegations is that if the EPA only disqualifies products that are certified, and if the light bulb purchased by Plaintiff was not disqualified until 2019, then the light bulb sold by Wal-Mart to Plaintiff was still certified by

Energy Star in August of 2018.  If the light bulb Plaintiff purchased was certified by Energy Star in August of 2018, Plaintiff's allegations fail to plausibly establish any misrepresentation on Defendant's part because Wal-Mart's label truthfully represented that its light bulb was Energy Star-qualified.

Plaintiff musters little response to the facts detailed above.  He contends that "[t]he DOE's disqualification applied to all of the [light bulbs], not just those manufactured during a particular year."  (Opposition at 12.)  Presumably, Plaintiff's underlying point is that the light bulb purchased by Plaintiff in August of 2018 failed to meet Energy Star standards at that time, and that the EPA's compliance tests in 2019 offered delayed confirmation that the light bulbs were energy inefficient.  But there are two problems with Plaintiff's argument.  First, Plaintiff fails to make sufficient allegations in the FAC to permit the Court to make such an inference.[4]  Second, Plaintiff's fraud-based claims rely on Wal-Mart's preexisting knowledge that the light bulbs were noncompliant with Energy Star standards when Plaintiff purchased them.  Not only does Plaintiff fail to sufficiently allege that the light bulbs were energy inefficient in August of 2018, but he fails to allege with particularity how and when Wal-Mart came to know the light bulbs were noncompliant with Energy Star standards prior to disqualification in 2019.[5]  See Vess, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged… [A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.") (internal quotations and citations omitted) (emphasis in the original).

In all, both the internal and extraneously-sourced contradictions of Plaintiff's allegations mean that the allegations fail to adequately allege when the light bulb purchased by Plaintiff ceased compliance with Energy Star standards and when Wal-Mart learned of the noncompliance — both facts essential to establishing that Wal-Mart misrepresented the light bulbs as Energy

---

[4] As discussed above, Plaintiff does allege that his light bulb was never Energy Star-qualified.  (FAC ¶ 48.)  However, that allegation is implausible given the judicially-noticed facts that establish the light bulb purchased by Plaintiff was listed on Energy Star's public certification list (RJN B at 2), that independent third-party verification of compliance with Energy Star standards is necessary to obtain certification (RJN A at 2), and that disqualification only occurs if an appliance is first certified and Energy Star-qualified (RJN 3 at 2).  As a result, the Court does not assume the truth of Plaintiff's allegation.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (holding that courts need not accept as true allegations that contradict judicially-noticed exhibits).

[5] In fact, to the extent Plaintiff does allege Wal-Mart's knowledge of the energy-efficiency of the light bulbs, he alleges that it "was aware of the [inefficient nature of the light bulbs] because it was aware that DOE-initiated testing had shown the mislabeled LED bulbs did not comply with ENERGY STAR standards."  (FAC ¶ 92.)  Plaintiff fails to explain how testing for disqualification in 2019 could establish Wal-Mart's awareness of the light bulb's noncompliance in August of 2018.

Star-qualified. Accordingly, the Court GRANTS the Motion as to Plaintiff's fraud-based claims and DISMISSES Claims Four to Seven.[6] Because Plaintiff could remedy the deficiencies in the FAC, the Court GRANTS leave to amend.

### B. Claims One and Two: Breach of Express Warranty and Implied Warranty of Merchantability

Defendant moves the Court to dismiss Claims One and Two in the FAC. (Memo at 16–17.) Claim One alleges a claim for breach of express warranty on the basis that Wal-Mart expressly warranted that the light bulb Plaintiff purchased was Energy Star-qualified. (FAC ¶ 63.) However, as detailed above, Plaintiff has failed to plausibly allege that the light bulb he purchased was noncompliant with Energy Star standards. In the Opposition, Plaintiff offers no alternative basis for Claim One to survive dismissal and merely repeats his dispelled argument that the light bulbs "have never, at any point, been properly labeled[.]" (Opposition at 14 (quoting FAC ¶ 18).) Accordingly, the Court GRANTS the Motion as to the breach of express warranty claim and DISMISSES Claim One WITH LEAVE TO AMEND.

Similarly, Claim Two warrants dismissal because Plaintiff has failed to adequately allege any defect — let alone a fundamental one — with respect to the light bulb he purchased. Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose.") (internal quotations omitted). As a result, the Court GRANTS the Motion as to the breach of implied warranty of merchantability claim and DISMISSES Claim Two. The Court GRANTS leave to amend.[7]

---

[6] Because the Court finds that Plaintiff's FAC fails to allege a misrepresentation with particularity, it does not address whether Wal-Mart's purported mislabeling constitutes an actionable misrepresentation. (Memo at 15–16.)

[7] Defendant argues that even if Plaintiff adequately alleged that the light bulb he purchased was noncompliant with Energy Star standards, energy inefficiency does not establish a defect that "renders the product unfit for its ordinary purpose" as a matter of law. (Motion at 17.) However, even if the Court assumes without deciding that Defendant is correct, the implied warranty of merchantability also warrants that goods are "adequately… labeled… [and] conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (explaining that a plaintiff can establish a breach of the implied warranty of merchantability under other prongs of section 2314(2)). Defendant does not address the possibility of Plaintiff adequately alleging violations of these other bases of a breach of the implied warranty and the Court cannot determine at this stage if amendment would be futile. Consequently, leave to amend is appropriate.

**C. Claim Three: Unjust Enrichment (Quasi-Contract)**

Last, Defendant seeks to dismiss Plaintiff's claim for unjust enrichment.[8] (Memo at 18.) As the Court has previously explained, "[t]here is no cause of action in California for unjust enrichment." Evans v. DSW, Inc., 2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017) (internal quotations omitted). However, the Court has also recognized that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." Id. (citing Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015)). Moreover, pursuant to Ninth Circuit authority, the Court has previously permitted plaintiffs to plead their quasi-contract claim in the alternative even when they allege other contractually-based claims. Id. (citing Astiana, 783 F.3d at 762–63 and permitting plaintiff to plead unjust enrichment as an alternative quasi-contract claim). Nevertheless, because the FAC fails to establish that Wal-Mart "has been unjustly conferred a benefit through mistake, fraud, coercion, or request," Claim Three is insufficiently pled. Astiana, 783 F.3d at 762. The Court thus GRANTS the Motion and DISMISSES Claim Three. The Court GRANTS Plaintiff leave to amend Claim Three.

### V. CONCLUSION

For reasons described above, the Court GRANTS the Motion and DISMISSES Claims One through Seven WITH LEAVE TO AMEND. Plaintiff shall file an amended complaint, if any, no later than April 19, 2020. The hearing scheduled for April 13, 2020 is VACATED.

**IT IS SO ORDERED.**

---

[8] In the heading of the final page of the Memo, Defendant appears to argue for dismissal of Plaintiff's "Declaratory Judgment Claims." (Memo at 18.) Plaintiff's FAC does not request declaratory relief and Defendant does not explain or elaborate with regard to the heading. As a result, the Court assumes that the heading is a typographical error.